UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD M. DAUVAL, Trustee for
the estate of Margaret Spies, an individual

        Plaintiff,

        v.                             Case No. 8:11-cv-2703-T-MAP

MRS BPO, L.L.C., a limited
liability corporation,

        Defendant.

_____/

**ORDER**

Plaintiff is seeking statutory damages against Defendant for making several debt collection calls to the Debtor's place of employment without her consent in violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692(a)) and the Florida Consumer Collection Practices Act (Fla. Stat. § 559.55(6)). Just before the commencement of the district's judge's trial calendar, the parties consented to my jurisdiction under 28 U.S.C. § 636(c) (*see* doc. 91). This order addresses three motions. The first is the Plaintiff's motion to strike Defendant's cross-motion for partial summary judgment ("Cross-Motion") and Defendant's references to its bona-fide error defense (doc. 69). This motion had been pending before the district judge and was left undecided at the time of § 636(c) referral to me. The second motion is the Defendant's motion for reconsideration (doc. 93), which the Defendant filed after the § 636 referral. That motion is intertwined with the Plaintiff's motion to strike and asks me, in effect, to reverse the district judge's ruling denying the

Defendant leave to amend its answer so as to add the bona-fide error defense, an affirmative defense the district judge had previously found wanting when she struck it from the Defendant's earlier answer. The last motion is Plaintiff's motion for partial summary judgment as to counts one, four, five, six, seven, eight, and Defendant's sixth affirmative defense (doc. 63). After consideration of all these matters, the Plaintiff's motion to strike is granted, the Defendant's motion for reconsideration is denied, and the Plaintiff's motion for partial summary judgment is granted.

*A. Background*

The core facts are undisputed. The Debtor obtained a credit card from Chase Bank USA, N.A ("Chase") to purchase personal items or pay family expenses; however, due to a loss in income, Debtor was unable to make the payments owed (doc. 63, ex. B1, Spies Dec. p. 1). Consequently, Chase engaged Defendant to assist in collection of the debt owed (doc. 67, Perkins Dec. pp. 1-2). To collect the debt, Defendant began making a series of telephone calls to the Debtor's place of employment, the Pineview School ("Pineview"), at phone number (941) 486-2474 (*Id.,* Ex. A, account information log for Debtor; Spies Dec. p. 2). In fact, Defendant made over 23 calls to Pineview; however, Defendant spoke to a person in just three of those calls (*Id.*; doc. 44).

The first of the three calls occurred on May 18, 2010. Defendant's representative, (Jackson), called Pineview asking for the Debtor. Informed that she was unavailable, Jackson spoke with the Debtor's co-worker (Perkins Dec., p. 2), who left a message slip for the Debtor that provided Jackson's telephone number and the matter's reference number

(Spies Dec. p. 2; doc. 63, Ex. F).  On August 18, 2010, another representative (Freeman) called the Debtor at Pineview (Spies Dec., p. 2; doc. 63, Ex. G).  Like before, the Debtor was unavailable (Perkins Dec., p. 3).  Freeman informed the Debtor's co-worker that she was representing the Defendant, and asked if the Debtor would return her call.  When asked by the co-worker whether the Debtor would know what the call was about, Freeman replied that the Debtor would need to know what the call was about, if the Debtor did not know already (doc. 63, Audio Exhibits).  The co-worker took Freeman's name, telephone number, and the matter's reference number (*Id.*; Perkins Dep., doc. 59,  p. 159-61) and gave it to the Debtor (Spies Dec., p. 2; doc. 63, Ex. G).  The Debtor returned the call and requested the Defendant not to contact her at work because she could get fired (Spies Dec., p. 2, Perkins Dec. p. 3). Accordingly, the Defendant's representative noted on the Debtor's account that no calls should be made to Pineview (Perkins Dec. p. 3).

Two months passed without calls to Pineview.  On October 15, 2010, however, another representative of Defendant (Brandon) called Pineview asking for the Debtor (*Id.* at p. 4; doc. 63, Audio Exhibits).  Like before, the Defendant could not be reached.  Brandon gave the Debtor's co-worker his phone number and asked the co-worker to give the Debtor a message to return his phone call (*Id.*).  Brandon also advised the co-worker that the message was regarding a personal business matter.  (*Id.*).  Consequently, the Debtor called the Defendant again and advised the Defendant not to call her at work, that such calls could make her lose her job, and that she was filing bankruptcy (Spies Dec. p. 4; doc. 63, Ex. C11). Defendant's representative then removed the Pineview number, so that it could not be called

again (Perkins Dec., p. 5).  Debtor alleges that Defendant told her calls would continue, despite her objections, until she provided her bankruptcy information (Spies Dec. p. 4). Debtor also alleges that her communications with Defendant have caused her to experience stress, anxiety, fear, loss of sleep, mental anguish, frustration, and annoyance (Spies Dec. p. 4).

Accordingly, Plaintiff filed this complaint against Defendant asserting Defendant violated the FCCPA and FDCPA (doc. 44).  Specifically, Plaintiff alleges that Defendant called Debtor's place of employment several times in an attempt to collect a debt without the Debtor's consent, without disclosing that the communication was from a debt collector, without first obtaining a judgment against her, and after learning Debtor was not to be contacted at her employer's number (*Id.*).

When the Plaintiff moved to modify the Court's original scheduling order so as to allow him to amend his complaint and extend the discovery and dispositive motion deadlines, the Defendant, notably, did not oppose the relief sought.  As a result, the district judge allowed the amendment, set new dates, and put the case on its June 2013 trial term (doc. 42).  When the Plaintiff filed his second amended complaint (September 21, 2012), the Defendant answered asserting eight affirmative defenses (docs. 44, 46), including the "bona-fide error defense."  But that assertion was bare-bones, prompting the Plaintiff to predictably move to strike the defense (and others) under Rule 12(f) for failure to satisfy Rule 8(a)'s minimal notice requirements.  The district judge agreed with Plaintiff's position and struck the defense (*see* Order on December 19, 2012, at doc. 53 explaining her reasons for striking

4

the defense and two other affirmative defenses for the same reasons).

In keeping with the case-management scheduling order, the Plaintiff timely filed his motion for partial summary judgment (doc. 63); the Defendant, in contrast, did not. Indeed, the Defendant did not file a separate summary judgment at all. Instead, in its response to the Plaintiff's summary judgment motion, the Defendant also cross-moved for summary judgment, asserting arguments based on Defendant's stricken bona-fide error defense (doc. 67). Predictably, the Plaintiff moved to strike this attempt at raising a defense that the district judge had previously stricken and at moving for summary judgment after the dispositive motion deadline had passed (*see* doc. 69, which is the current motion before me). Faced with another credible motion to strike, the Defendant sought leave to amend its answer to include the bona fide defense (doc. 73). Furthermore, the Defendant added that if the Court struck its cross-motion for summary judgment as untimely (as the Plaintiff requested), the Court should *sua sponte* grant the Defendant partial summary judgment for the reasons stated in its response to the Plaintiff's partial summary judgment motion. *See* doc. 81 (Defendant's response to the Plaintiff's motion to strike). In short, the Defendant hoped the Court would act on its behalf if it could not. Notably missing from this invitation is any citation of authority supporting the proposition.[1]

On May 29, 2013, just before the commencement of the June trial calendar for the

---

[1] A court admittedly has the authority to *sua sponte* grant summary judgment, but the losing party against whom judgment will be entered must be given sufficient advance notice and afforded an adequate opportunity to demonstrate why summary judgment should not be granted. Only after this process is granting summary judgment *sua sponte* appropriate. *Bruton v. City of Belle Glade*, 178 F.3d 1175, 1203-04 (11th Cir. 1999).

case, the district judge issued a lengthy, detailed order denying the Defendant's motion for leave to amend its answer.  In sum, the district judge saw the obvious – the Defendant was attempting to assert an affirmative defense she had already struck and moving for summary judgment well after the deadline for doing so.  Moreover, permitting an amendment at this late date, and without good cause, would be highly prejudicial to the Plaintiff.  *See* doc. 90 at p. 6.  Two days after entry of this order, the parties consented to my jurisdiction.  *See* doc. 91; 28 U.S.C. § 636(c).  Now before a new judge, the Defendant quickly asks me to do what my predecessor said it could not do – amend its answer.  Put another way, the Defendant asks me to vacate the district judge's well-reasoned May 29 order which rejected an amendment after the discovery and dispositive motion deadlines had passed (doc. 93).  And, in the event I agreed with the May 29 order, the Defendant wants me to authorize an interlocutory appeal under 28 U.S.C. § 1292 allowing it to appeal my order to the Eleventh Circuit.

### B.  *Discussion*

#### 1.  *the Defendant's motion for reconsideration of the May 29 order*

Admittedly, "[a] court has the power to revisit prior decisions of its own or of a coordinate court, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted). The Eleventh Circuit interprets this language to mean that "in a close case, a court must defer to the legal conclusion of a coordinate court in the same

case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370-71 (11th Cir. 2003); *see also Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983) quoting *Peterson v. Hopson*, 306 Mass. 597, 603 (1940) ("A judge should hesitate to undo his own work. Still more he should hesitate to undo the work of another judge. But until final judgment or decree there is no lack of power, and occasionally the power may be properly exercised."). Besides, "a motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007).

In her May 29 order, the district judge concluded the Defendant had failed to show good cause for deviating from the scheduling order deadlines. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (motions to amend pleadings filed after the scheduling order deadlines must meet the good cause standard under Rule 16(b) before the court will consider the amendment proper under Rule 15(a); otherwise the scheduling is rendered a nullity). Having reviewed the order, the Defendant's motion for reconsideration is not a close call for all the reasons the district judge set out and the Plaintiff emphasizes in its opposition to the motion (doc. 94). The Defendant waited almost a year after the scheduling deadline to re-plead its bona fide error defense and nearly four months after the Defendant filed its amended answer to the operative complaint and 48 days after the Court struck its bona-fide error defense. The Defendant's "impetus" to belatedly seek leave to amend the answer, as the district judge observed in her May 29 order, was not any newly discovered

7

information; on the contrary, it was Plaintiff's motion for partial summary judgment. "[A]bsent repleading, the bona-fide error defense, Defendant realized it would be unable to rely on the affirmative defense in its response." *See* order at doc. 90 at p. 4-5.

Moreover, even assuming error, I see no manifest injustice in refusing to allow the Defendant to raise its bona-fide error defense. *See Chasteen v. Jackson*, No. 1:09-cv-413, 2012 WL 6213796, at *3 (S.D. Ohio 2012) ("manifest injustice" equates to a "clear and gross injustice"); BLACK'S LAW DICTIONARY (9th ed 2009) ("manifest injustice" means a "direct, obvious, and observable error" in the trial court). The Defendant's overriding assumption is that this affirmative defense insulates it from liability – hence the claim of manifest injustice. But even if I were to the view the supporting facts from the Defendant's perspective (i.e., applying the summary judgment standard), I would find the Defendant's argument unpersuasive.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e)(a); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301 (11th Cir. 2012). And the scheme "typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. Sys., Inc.*, 692 F.3d 1263, 1270-71 (11th Cir. 2011). As a consequence, courts view the FDCPA as "a strict liability statute." *Id.* at 1271. The bona-fide error defense offers a "carve-out" provision that allows an offending debt collector to escape liability, but the exception is "narrow." *Id.* To assert the defense, the debt collector must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred

8

despite the maintenance of procedures reasonably adapted to avoid such errors.  *Edwards v. Niagra Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).  The failure to meet any one of these requirements is fatal to the defense.  *Id.* at 1353.  "Bona fide," as the term is used in the Act, means that the error resulted in a violation that the debt collector made in good faith; in other words, it was not a contrived mistake.  And the mistake must be one that is objectively reasonable.  *Id.*

Here, the Defendant admits it called the Debtor after she had stated to its representatives that she no longer wanted Defendant to call her at work.  The Defendant also admitted that it has procedures in place to note such comments and that its agents are knowledgeable about these procedures and the Act's requirements.  Nonetheless, a couple months later, the Defendant called the Debtor's work.  Obviously, the Defendant's agent who called the Debtor at her work intended to call her.  That fact alone undercuts the defense.  Nonetheless, the Defendant contends that for some unknown reason, its sophisticated computer removed the no-call code.  In short, the system glitched, or so the Defendant opines.  Having considered the Defendant's affidavits on this score, what the Defendant's affiant is really saying is he has no personal knowledge about the triggering event.  Unable to uncover who changed the code, the affiant reasons the computer must have made the mistake.  That same affiant, however, is unable to recall any other similar computer malfunction.  His opinion that the computer changed this one code for this one Debtor is speculative at best.  The affiant and his opinion do not meet the predicate and reliability standards set out in Fed. R. Evid. 702 or the relevancy demands set out in Fed. R. Evid. 402.

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1999); *see also Allen v. NCO Fin. Sys., Inc.*, No. 07-c-3992, 2002 WL 1291791, at *5 (N. D. Ill. 2002) (rejecting collector's bona fide defense summary judgment argument because it failed "to produce any evidence as to the alleged computer error – no documents or affidavits evidencing the procedures defendant had in place to avoid such errors, nor any documents or affidavits related to the *facts* involving this *particular* computer programming blunder.") (emphasis added).  If a party offers opinion evidence on the hearing of a motion for summary judgment, the court must determine in advance whether that evidence would be admissible if the trial were on the merits.  *Elliott v. Massachusetts Mut. Life Ins. Co.*, 388 F.2d 362, 366 (5th Cir. 1968).[2] Considering that the Defendant bears the burden on this defense, even assuming the district judge erred in denying the motion for leave to add the defense (which is not the case), that error was not manifestly unjust.

In the event the Defendant's motion to strike is denied, the Defendant moves for the Court's certification to take an interlocutory appeal.  The operative provision is 28 U.S.C. § 1292(b), which in relevant part says:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order….

The statute puts forth three specific demands.  *McFarlin v. Conseco Servs.*, *LLC*, 381 F.3d

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit  adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

1251, 1255-1259 (11th Cir. 2004). The certified issue presents a controlling question of law – one that is "pure" and allows the court of appeals to rule "without having to delve beyond the surface of the record in order to determine the facts." *Id.* at 1259. In the main, it should have enough legal heft to "lift the question out of the details … of a particular case and give it general relevance to other cases in the same area." *Id.* Next, substantial grounds for differing opinions must exist. If the district court applied settled law to the case's facts, an interlocutory appeal is plainly inappropriate. *Id.* at 1258. Instead, courts should be divided on the question, or it should be particularly difficult, even one of first impression. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("fair-minded jurists might reach contradictory conclusions"); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (difficult or first impression). Lastly, an appellate answer to the question should materially advance the ultimate termination of the litigation either by avoiding a trial or substantially shortening the litigation. *McFarlin*, 381 F.3d at 1259. As to these requirements, the movant bears the burden. And, even assuming it were to satisfy all three demands, the motion is committed "wholly" to the discretion of the district court and the court of appeals. *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1358-1359 (11th Cir. 2008) (the statute sets a "high threshold"); *McFarlin*, 381 F.3d at 1259, 1264 (even if all three factors present, court can reject appeal; petitioning party bears burden). The circuit cautions prudence when examining such motions, as "the proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use

of the § 1292(b) exception to it." *McFarlin*, 381 F.3d at 1259.  Therefore, interlocutory review should be the "rare exception," and most interlocutory orders will not meet the test. *McFarlin*, at 1264 (rare exception); *OFS Fitel, LLC*, 549 F.3d at 1359.

Against these stringent standards, the Defendant loses sight of the specific error it wishes to take up on interlocutory appeal – the denial of a motion to reconsider.  Not only is the motion to reconsider a matter committed to the sound discretion of the court, so too was the order that was the focus of the motion.  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.3d 800, 806 (11th Cir. 1993) (motion for reconsideration is committed to the court's sound discretion); *Sosa*, *supra*, 133 F.3d at 1418 (district courts decision to enforce its pretrial order will not be disturbed on appeal absent abuse of discretion).  The Defendant meets none of *McFarlin's* requirements, and its motion seeking certification for an interlocutory appeal is without merit.

### 2.  the Plaintiff's motion to strike

The thrust of this motion is simple – to prohibit the Defendant from raising an affirmative defense that the district judge struck and one that the Defendant seeks to present in a manner that also runs afoul of the scheduling order.  For the reasons already stated, the Defendant's cross motion for summary judgment on the issue was improper and the motion is granted.

### 3.  the Plaintiff's motion for partial summary judgment

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jackson v. BellSouth Telecomm's.*, 372 F.3d 1250, 1279-80 (11th Cir. 2004). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Essentially, an issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case, and an issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

The moving party bears the initial responsibility to inform the court of the basis for its motion and to identify the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it contends demonstrate the absence of a genuine issue of material fact. *Id.* at 1260. Where the non-moving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing an absence of evidence supporting the non-moving party's case or by showing that the non-moving party will be unable to prove its case at trial. *Id.* "To survive summary judgment, the non-moving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion."

13

*Id.*  Indeed, the non-moving party must go beyond the pleadings and by her own affidavits, or depositions, answers to interrogatories, and admissions on file, identify specific facts showing a genuine issue exists for trial.  *Celotex*, 477 U.S. at 324.

In considering the evidence, the court resolves all reasonable doubts about the facts in favor of the non-moving party and draws all justifiable inferences in her favor.  *Hickson*, 357 F.3d at 1260.  The court does not, however, weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249-50.

### a.  count one – FCCPA Section 559.72(4)

Plaintiff argues that Defendant violated Fla. Stat. § 559.72(4) by communicating or threatening to communicate with Debtor's employer without Debtor's express written consent or first obtaining a final judgment against Debtor.  As support, Plaintiff asserts that the plain-meaning of § 559.72(4) and the remedial nature of the FCCPA suggest the "Legislature contemplated prohibiting debt collection calls to consumers' employers or places of employment." *See* doc. 63, p. 16.  Accordingly, because Defendant communicated and left messages with Debtor's place of employment without Debtor's consent and without a final judgment, Defendant has violated the FCCPA.  Defendant asserts that it did not call or threaten to call Debtor's employer.  Instead, Defendant called Debtor at her place of employment during business hours.

The FCCPA was enacted to protect consumers from certain abusive tactics by debt collectors.  *See* Fla. Stat. § 559.75.  In particular, § 559.72(4) prevents any person from communicating or threatening to communicate with a debtor's employer prior to obtaining

14

a final judgment against the debtor, unless the debtor gives her permission in writing to contact her employer or acknowledges in writing the existence of the debt after the debt has been placed for collection.  Section 559.55 defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

The Court has not located a Florida case that conclusively answers the question of whether leaving a message with a debtor's co-worker indicating only the name and telephone of a debt collector, a reference number, a request for debtor to return the call, and that the call is related to a personal business matter conveys information regarding a debt directly or indirectly to the employer.  And the case Plaintiff cites in support of his argument is unhelpful.  Despite the lack of Florida case law, the FCCPA directs courts in applying and construing provisions of the FCCPA to give due consideration and great weight to the interpretations of the federal courts relating to the FDCPA.  Fla. Stat. § 559.77(5).  Indeed, the FCCPA's definition of communication is identical to the definition under the FDCPA. *See* 15 U.S.C. § 1692a(2).  In addition, "[t]he FCCPA unequivocally states its goal – to provide the consumer with the most protection possible under either the state or federal statute."  *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185, 1192 (11th Cir. 2010)(*quoting* Fla. Stat.§ 559.552 ("In the event of any inconsistency ... the provision which is more protective of the consumer or debtor shall prevail.")).

When defining an indirect communication, federal "courts have taken an extremely broad view."  *Zortman v. J.C. Christensen & Assoc., Inc.*, 870 F. Supp.2d 694, 703 (D. Minn 2012) (citing *Thomas v. Consumer Adjustment Co.*, 579 F. Supp.2d 1290, 1296-97 (E.D. Mo.

2008)(finding that because the debt collector left a telephone number for the consumer to return its call, the call was in connection with the collection of a debt in violation of § 1692c(b)); *Belin v. Litton Loan Servicing, L.P.*, No. 8:06-cv-760-T-24, 2006 WL 1992410, at *4 (M.D. Fla. July 14, 2006)(finding a message whose purpose was to induce the consumer to return the call indirectly conveyed information about a debt); *West v. Nationwide Credit, Inc.*, 998 F. Supp. 642, 644-45 (W.D.N.C. 1998)(holding that leaving a live message with a third party indicating the call was related to a "very important" matter but not mentioning a debt or that the caller was a debt collector was a communication in violation of § 1692c(b)).   From this perspective, the Defendant's calls to the Debtor's employer fall within § 559.72(4)'s ambit.   The Defendant gave the Debtor's co-workers the reference number to their collection effort, told them the call related to a personal business matter involving the Defendant, and provided them with a number for the Debtor to return the call to discuss the debt.   *See Chalik v. Westport Recovery Corp.,* 677 F. Supp.2d 1322, 1327 (S.D. Fla. 2009) (holding that if defendant left message with the purpose of having Plaintiff call them back in connection with the debt, it considered the voice mail message a communication); *see also Foti v. NCO Financial Systems, Inc.*, 424 F. Supp.2d 643, 655-56 (S. D. N. Y. 2006) ("[T]he FDCPA should be interpreted to cover communications that convey, directly, or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected."); *Belin*, 2006 WL 1992410, at *4.   Accordingly, summary judgment as to count one is warranted.

16

*b.  counts four and five – FDCPA Section 1692c(a)(1);(3)*

Like the FCCPA, the purpose of the FDCPA is "to eliminate debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection issues." 15 U.S.C. § 1692(e). To prevail on a FDCPA claim, Plaintiff must prove: (1) she was the object of collection activity arising from a consumer debt; (2) Defendant is a debt collector as defined by the FDCPA; and (3) Defendant has engaged in an act or omission prohibited by the FDCPA.  *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008).  "The FDCPA does not ordinarily require proof of intentional violation, and, as a result, is described by some as a strict liability statute."  *LeBlanc*, 601 F.3d at 1190.  If a debt collector violates the FDCPA, the debt collector may be subject to civil liability, including liability for damages actually sustained by the injured person, potential statutory damages, and costs and attorney's fees incurred.  15 U.S.C. § 1692k(a).

Plaintiff first claims Defendant violated the FDCPA by communicating with the Debtor at a time or place known, or which should be known, to be inconvenient and despite knowing, or having reason to know, that such communications were prohibited in violation of 15 U.S.C. § 1692c(a)(1);(3).  In support, Plaintiff asserts although Defendant had received actual knowledge from Debtor that calls to her place of employment were inconvenient and could result in the debtor being fired, Defendant continued to call Pineview.  Moreover, Defendant's training manuals specifically advised Defendant that calls to places of

17

employment, like Debtor's school employer, are inherently inconvenient.

Under 15 U.S.C. § 1692c, a debt collector may not communicate with a consumer in connection with the collection of any debt, without the prior written consent of the consumer, at any unusual time or place known or which should be known to be inconvenient to the consumer (15 U.S.C. § 1692c(a)(1)) or at the consumer's place of employment if the debt collector knows or has reasons to know that the consumer's employer prohibits the consumer from receiving that type of communication (15 U.S.C. § 1692c(a)(3)).  There is no dispute that Defendant called Debtor at her place of employment after Debtor specifically told Defendant to no longer call her there.  (doc. 63, p. 18; doc. 67, p. 17).  As such, summary judgment is appropriate on her claims under § 1692c(a)(1) or (a)(3).  *See Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F. 3d 769, 773 (7th Cir. 2003)(holding consumer's statement that she could not discuss her debt at work was enough to put debt collector on notice under § 1692c(a)(3) that consumer's employer prohibited her from receiving communications at work).  Accordingly, Plaintiff is entitled to summary judgment as to counts four and five.

*c. count six – FDCPA Section 1692c(b)*

Plaintiff next claims that Defendant violated the FDCPA by contacting Debtor's employer, a third party, to collect a debt in violation of 15 U.S.C. § 1692c(b).  In opposition, Defendant argues that it did not contact the Debtor's employer to collect a debt; it attempted to contact Debtor at work to speak with the Debtor about the debt.

Section 1692c(b) states

Except as provided in section 1692b of this title, without the

18

> prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Under § 1692b, however, a debt collector may communicate with a third party if the purpose is to acquire location information about a consumer as long as the debt collector does not identify himself or state that the consumer owes a debt. 15 U.S.C. § 1692b. Furthermore, at least one court has stated that "Section 1692c(b) should be broadly interpreted to prohibit a debt collector, in connection with the collection of any debt, from conveying any information relating to a debt to a third party (except for the purpose of obtaining location information as permitted under section 1692b)." *West, supra,* 998 F. Supp. at 645.

Clearly, the Defendant called Pineview not to find the Debtor but to speak to her about her debt (doc. 46, p. 8; Perkins Dep, p.147). And before making these calls, the Defendant had not obtained her consent nor secured a judgment against her (doc. 46, p. 7). Thus, the only remaining issue is whether Defendant communicated with a third-party to collect a debt, a question the Court has already answered. As previously stated above, the Court finds Defendant intentionally communicated with a third party, Pineview, in attempt to reach Debtor to collect a debt. *See West*, 998 F. Supp. at 645 (finding defendant had communicated with a third party by leaving a message with plaintiff's neighbor that asked the neighbor to have plaintiff call defendant without mentioning a debt or that the caller was

a debt collector violated 15 U.S.C. § 1692c(b)).   Accordingly, Plaintiff is entitled to summary judgment as to count six.

### d. counts seven and eight - FDCPA Sections 1692d(6) and 1692(e)(11)

Next, Plaintiff asserts Defendant violated the FDCPA by placing calls to Pineview without disclosing the nature of Defendant's business or that it was a debt collector attempting to collect a debt in violation of 15 U.S.C. § 1692d(6) and 1692e(11).  In support, Plaintiff asserts that Defendant, on at least three occasions, left messages with Debtor at Pineview without disclosing that it was attempting to collect a debt or that it was a debt collector and in two of those occasions failed to identify the Defendant's name as the caller. To rebut that argument, Defendant maintains that if it had disclosed to Pineview that the call was from a debt collection agency and that the call was an attempt to collect a debt, it would have violated section 1692c(b), which prevents Defendant from communicating with third-parties about a debt without prior consent from the consumer.  15 U.S.C. § 1692c(b).  Thus, Defendant argues it was inappropriate for Defendant to reveal its identity or the reasons for its call.

Under 15 U.S.C. § 1692d, "a debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Specifically, a debt collector may not place telephone calls without meaningful disclosure of the caller's identity except when attempting to locate a consumer. 15 U.S.C. §§ 1692b; 1692d(6).  Similarly, under 15 U.S.C. § 1692e(11), "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with

20

a debt" including "the failure to disclose in the initial [oral] communication … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector."  "Under either provision of the FDCPA, the caller must make clear that he or she is a debt collector calling in relation to a debt, 'so as not to mislead the recipient as to the purpose of the call.'" *Breeders v. Gulf Coast Collection Bureau, Inc.*, No. 8:09-cv-00458-EAK-AEP, 2010 WL 2696404, at *3 (M.D. Fla. Jul. 6, 2010) *aff'd*, 432 F. App'x 918 (11th Cir. 2011)(quoting *Hosseinzadeh v. M.R.S. Assoc., Inc.*, 387 F. Supp.2d 1104, 1112 (C.D. Cal. 2005).

Here, it is undisputed that Defendant intentionally failed to identify itself on at least two occasions when it left messages with Pineview (doc. 63, Audio Exhibits; Perkins Dec., p. 2).  It is further undisputed that Defendant purposely failed to disclose it was a debt collector in those messages or that it was attempting to collect a debt (*Id.*).  Defendant argues, however, that if Defendant had disclosed that it was a debt collector and that the call was related to a debt it would have violated section 1692c(b).

The Eleventh Circuit has rejected this type of argument.  *See Edwards v. Niagara Credit Solutions, Inc.*, 584 F. 3d 1350 (11th Cir. 2009).  In *Edwards*, the debt collector left a message on debtor's answering machine instructing the debtor to return the debt collector's call.  The debt collector, apparently concerned that a third party might hear the message, purposely omitted revealing his identity so as not to violate 15 U.S.C. § 1692c(b).  Hence, it should not be liable under the Act.  *Edwards* rejected this argument.  Because the FDCPA

did not guarantee the debt collector the right to leave messages on a debtor's answering machine, the debt collector's perceived Hobson's choice was not a Hobson's choice at all. *Id.* at 1354; *see also Chalik*, 677 F. Supp.2d at 1328 (agreeing with the Eleventh Circuit that a debt collector has no right to leave voice mail or an answering machine message because it has other methods to reach debtors like "postal mail, in-person contact, and speaking directly by telephone."). The factual distance between *Edwards* and this case is minuscule – leaving a message on an answering machine versus leaving one with a co-worker. But their gravamen is the same because the FDCPA was specifically enacted to prevent this sort of contact with third parties by debt collectors. *See* S. Rep. No. 95-382, WL16047 at *4 (1977) (stating one purpose of the FDCPA was to specifically prohibit "disclosing the consumer's personal affairs to third persons. Other to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as loss of jobs."). Accordingly, Plaintiff is entitled to summary judgment as to counts seven and eight.

*e. sixth affirmative defense – failure to mitigate*

Lastly, Plaintiff argues it is entitled to summary judgment on Defendant's sixth affirmative defense, which asserts Debtor failed to mitigate her damages. Plaintiff argues that it is undisputed Debtor took affirmative steps to mitigate potential actual damages by advising the Defendant to not contact her place of employment. In its opposition, Defendant failed to address this argument. Because Defendant has failed to meet its burden to show a

genuine issue of fact exists on this defense, summary judgment is appropriate on Defendant's claim that Plaintiff failed to mitigate her damages.  *See Celotex*, 477 U.S. at 324.

*C.  Conclusion*

Accordingly, it is hereby

ORDERED:

1.  Defendant's motion for reconsideration (doc. 93) is DENIED.

2.  Plaintiff's motion to strike Defendant's Cross-Motion and Defendant's references to a bona-fide error defense (doc. 69) is GRANTED.

3.  Plaintiff's motion for partial summary judgment as to counts one, four, five, six, seven, eight, and affirmative defense six (doc. 63) is GRANTED.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE